AMERICAN ARBITRATION ASSOCIATION
AAA No. 11 160 00357 08

MARK PASSOW, ASTRID ALEXANDRA RAMIREZ,
REBECCA KILGALLON and DONA FRAENKEL

vs.

THE SMITH & WOLLENSKY RESTAURANT GROUP, INC.

## MEMORANDUM AND ORDER REGARDING RECONSIDERATION OF THE ARBITRATION CLAUSE CONSTRUCTION

### Background

On July 2, 2008, the Arbitrator issued a Partial Final Award on Arbitration Clause Construction (the "Clause Construction Award") determining that the arbitration clause in the Dispute Resolution Agreement (the "DRA") executed by the Claimants herein permits this arbitration to proceed on behalf of a class appropriately certified pursuant to AAA C.A.R. Rule 4.[1] In the Arbitrator's conclusion on the Clause Construction Award, the following is stated as part of the reasoning:

> "In the face of the silence in the DRA as to whether class arbitration is permitted or prohibited, when read together with the Massachusetts and Federal law favoring both arbitration and class action proceedings, this Arbitrator concludes and rules that a prohibition on class arbitration cannot and should not be read *sub silencio* into the DRA in issue."

On April 27, 2010, the Supreme Court of the United States issued its decision in *Stolt-Nielsen S.A., et al. v. AnimalFeeds International Corp.*, 559 U.S. __, 103 S. Ct. 1798 (2010).[2] In

---

[1] The class has yet to be determined and certified, basically at the specific behest of the parties because of their pursuit of settlement and their extended discovery efforts on class action issues. Settlement has not been achieved, and briefing on class certification is now almost complete.

[2] In this ruling the Arbitrator will cite to the Slip Opinion in *Stolt-Nielsen*.

that decision the Court ruled, among other things, that "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." Slip Op. at 21.

## Discussion

This Arbitrator, having become concerned that his prior decision on the availability of class action arbitration in this matter may be inconsistent with the Supreme Court's recent ruling in *Stolt-Nielsen*, acceded to the request of The Smith & Wollensky Restaurant Group, Inc. ("S&W") to reconsider that decision, after appropriate briefing.[3]

Full familiarity with the July 2, 2008, Clause Construction Award and the reasoning contained therein is presumed.

The DRA executed by each of the Claimants here includes the following language:

> By accepting or continuing employment with the Company, you agree and understand that both you and the Company mutually agree to resolve and [sic] binding arbitration *any claim that, in the absence of this Agreement, would be resolved in a court of law under applicable state or federal law.* . . .
>
> By accepting or continuing employment with the Company, you and the Company both agree to resolve such claims through **final and binding arbitration.** *This includes,* but is not limited to . . . any claims under contract or tort law; *any claims for wages, compensation or benefits;* . . . .
>
> You and the Company agree that the dispute will be resolved by **final and binding arbitration.** You and the Company will select a single arbitrator. [Reference then is made to the AAA making the selection if the parties cannot agree and to the arbitration being conducted in accordance with rules of the AAA]. . . .

---

[3] The Arbitrator treats the request for this reconsideration by S&W, and the Claimants' participation therein without protest, as a waiver of any argument that, as to the July 2, 2008, Partial Final Award on Arbitration Clause Construction, this Arbitrator is now subject to the *functus officio* doctrine. See, e.g., *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967); *National Mutual Insurance Company v. First State Insurance Company*, 213 F. Supp. 2d 10, 16-17 (D. Mass. 2002).

2

> *The arbitrator will decide all claims under the applicable local laws where you work or last worked for the Company. . . .*

(Bolding in original; italics added for emphasis.)

In their briefing leading up to the Clause Construction Award, the Claimants and S&W did not express any disagreement that the language quoted immediately above is, in fact, what appears in the DRA or that the DRA is the arbitration agreement under consideration. Nor did the Claimants or S&W challenge that, by the DRA, the parties have agreed to arbitration.

It was the Claimants' contention in their initial Memorandum on Clause Construction that there is no language in the DRA that *precludes* class arbitration. S&W, in its initial Memorandum of Law Regarding Clause Construction, asserted that the DRA contains no language that *permits* arbitration on a class-wide or multiple-claim basis. The Arbitrator agreed with the parties in the Clause Construction Award that the DRA is silent as to specific language either permitting or prohibiting class arbitration.

The Claimants are waitstaff employees at S&W's restaurant in Boston, Massachusetts. They complain that S&W "has improperly taken a 'tip credit' against the minimum wage for its waitstaff employees and has thereby paid these employees less than the permissible standard minimum wage." The Claimants make their Demand on behalf of themselves and all others similarly situated in S&W restaurants throughout the United States.

In the Clause Construction Award this Arbitrator recited his acceptance that:

"his determination should be made applying generally applicable principles of contract interpretation as applied in the Commonwealth of Massachusetts. The DRA mandates that the Arbitrator will decide the claims 'under the applicable local laws where [the Claimants] work or last worked for [S&W].' Still further, in doing so, this Arbitrator accepts that 'if there is doubt about that matter – about the "scope of the arbitrable issues" – [the Arbitrator] should resolve that doubt 'in favor of arbitration.'"

3

The Arbitrator also made the following comments about Massachusetts contract law.

"In Massachusetts the interpretation of an unambiguous agreement is an issue of law for the court. *Bank* v. *Thermo Elemental Inc.*, 451 Mass. 638, 648 (2008); *Lumbermans Mut. Cas. Co.* v. *Zoltek Corp.*, 419 Mass. 704, 707 (1995). Here, of course, the Arbitrator stands in a place similar to that of a court. Contract language must be construed in its usual and ordinary sense. *116 Commonwealth Condominium Trust* v. *Aetna Cas. & Surety Co.*, 433 Mass. 373, 376 (2001); *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998). A contract provision is ambiguous 'only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.' *Citation Ins. Co., supra*, 426 Mass. at 381. The mere fact that parties disagree on the proper construction of contractual language, however, does not necessarily establish ambiguity. *Lumbermans Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. 462, 466 (1995); *Jefferson Ins., Inc.* v. *Holyoke*, 23 Mass. App. Ct. 472, 475 (1987).

"Generally, '[t]he object of the [Arbitrator] is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose.' *USM Corp.* v. *Arthur D. Little Systems, Inc.*, 28 Mass. App. Ct. 108, 116 (1989). The Arbitrator must act in a way to give effect to an agreement as a rational instrument in order to carry out the intent of the parties. *Starr* v. *Fordham*, 420 Mass. 178, 192 (1990). Even in the case of an ambiguous agreement, interpretation is a matter of law for the Arbitrator except insofar as it may turn on facts in genuine dispute. *Gross* v. *Prudential Ins. Co. of America, Inc.*, 48 Mass. App. Ct. 115, 119 (1999).

"Justice, common sense and the probable intention of the parties upon consideration of the words in question are guides to the construction of a written contract. *City of Haverhill* v. *George Brox, Inc.*, 47 Mass. App. Ct. 717, 720 (1999)."

In the Clause Construction Award the Arbitrator disagreed that the silence in the DRA created an ambiguity that would allow the Arbitrator to read into it specific language permitting class arbitration. The Arbitrator concluded that no additional language permitting class arbitration was needed. The explanation given was that "[f]ederal law requires the vigorous enforcement of agreements to arbitrate. See *Mitsubishi Motors Corp., supra*, 473 U.S. at 626, (quoting *Dean Witter Reynolds, Inc.* v. *Byrd*, 470 U.S. 213, 221 (1985)."

It was also observed that Massachusetts takes a similar approach.

4

"Arbitration is a creature of contract, and what we have before us is in essence a contract dispute. Four basic principles have guided our discussions of arbitration contracts. First, a party cannot be required to arbitrate any dispute that it has not by contract submitted to arbitration. Second, unless otherwise provided by the parties, the preliminary question whether a dispute is subject to arbitration is an issue for judicial determination. Third, when deciding whether a dispute is arbitrable, a court does not consider the merits of underlying claims. Fourth, when considering a broadly worded arbitration clause, there is a presumption that a contract dispute is encompassed by the clause unless it is clear that the dispute is excluded. See *Local Union No. 1710, Intern. Ass'n of Fire Fighters, AFL-CIO* v. *City of Chicopee*, 430 Mass. 417, 420-421 (1999), and cases cited. See also *AT & T Techs., Inc.* v. *Communications Workers*, 475 U.S. 643, 648-650 (1986).

*Commonwealth* v. *Philip Morris Incorporated*, 448 Mass. 836, 843-844 (2007)."

Additionally, the Arbitrator noted that "Massachusetts, like essentially all states and the Federal courts, has provisions for and approves of the resolution of appropriate kinds of cases as class actions. See Mass. R. Civ. P. Rule 23."

In this matter in particular the Arbitrator observed that the

"Claimants rely for legal support of their claims on the Fair Labor Standards Act and the Massachusetts wage and hour laws. These laws specifically allow for class action treatment where appropriate. See 29 U.S.C. § 216(b); Mass. G.L. c. 149, §§ 150, 152A."

The Arbitrator concluded that "[in] the face of the silence in the DRA as to whether class arbitration is permitted or prohibited, when read together with the Massachusetts and Federal law favoring both arbitration and class action proceedings . . . a prohibition on class arbitration cannot and should not be read *sub silencio* into the DRA in issue."

The majority opinion in *Stolt-Nielsen* opens with an explanation of the reason for its issuance. "We granted certiorari in this case to decide whether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the Federal Arbitration Act (FAA), 9 U.S.C. §1 *et seq*." Slip Op. p. 1. Respectfully, a reading of the opinion that follows

5

provides an answer all too common to legal questions so posed: "it all depends."

Early in the opinion, the Court made this instructive comment:

> "Because the parties agreed their agreement was 'silent' in the sense that they had not reached any agreement on the issue of class arbitration, the arbitrators' proper task was to identify the rule of law that governs in that situation. Had they engaged in that undertaking, they presumably would have looked either to the FAA itself or to one of the two bodies of law that the parties claimed were governing, *i.e.*, either federal maritime law or New York law. But the panel did not consider whether the FAA provides the rule of decision in such a situation; nor did the panel attempt to determine what rule of law would govern under either maritime law or New York law in the case of a 'silent' contract."

Slip Op., p. 8.

The Supreme Court then faulted the panel in *Stolt-Nielsen* for not doing so. The Court said:

> "Rather than inquiring whether the FAA, maritime law, or New York law contains a 'default rule' under which an arbitration clause is construed as allowing class arbitration in the absence of express consent, the panel proceeded as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied in such a situation."

Slip Op., p. 9.

This point was repeated later when the Court said "instead of identifying and applying a rule of decision derived from the FAA or either maritime or New York law, the arbitration panel imposed its own policy choice and thus exceeded its powers." Slip Op., p. 12.

The *Stolt-Nielsen* Court emphasized a well recognized, and oft repeated, premise of arbitration law. "While the interpretation of an arbitration agreement is generally a matter of state law ... the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" Slip Op., p. 17. See, also, *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 944 (1995). The Court cites to *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). "[P]rivate

6

agreements to arbitrate are enforced according to their terms." Slip Op., p. 18. "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Id.*

The Court observed that "[N]othing in the [FAA] authorizes a court to compel arbitration on any issues, *or by any parties*, that are not already covered in the agreement." *Id.* The Court then pronounced that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." Slip Op., p. 20.

Having made these statements, this Arbitrator would have expected the Court in *Stolt-Nielsen* to then abruptly close its opinion with words to the effect that because the arbitration agreement in issue is silent on the issue of class-action arbitration, none can be compelled. But the Court did not stop at this obvious juncture; and this leads this Arbitrator to read the Court's decision as saying that under certain circumstances, even in the face of silence, class-arbitration can be authorized. Indeed, the Court's words that follow make that clear.

> "In certain contexts, it is appropriate to presume that parties that enter into an arbitration agreement implicitly authorize the arbitrator to adopt such procedures as are necessary to give effect to the parties' agreement. Thus, we have said that ' " 'procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively not for the judge, but for the arbitrator, to decide.'"

Slip Op., pp. 20-21.

> "'When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.' Restatement (Second) of Contracts §204 (1979)."

Slip Op., p. 21.

> "An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer *solely* from the fact of the parties' agreement to arbitrate."

7

(Emphasis added.)

*Id.*

The Court went on to express its concern about the differences between bilateral and class-action arbitration and their effect on agreements to arbitrate. The Court said

> "We think that the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' *mere* silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." (Emphasis added.)

Slip Op., p. 23.

This Arbitrator emphasizes the words "solely" and "mere" in the foregoing quotations because they clearly imply that something other than silence, if it exists, is not only required but, if present, could carry the day on the issue. In other words, silence alone does not either *permit* or *prohibit* class-action arbitration. And, significantly, the footnote, (fn. 10), that the Court added at the end of the last quotation above is telling. That footnote reads:

> "We have no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration. Here, as noted, the parties stipulated that there was 'no agreement' on the issue of class-action arbitration."

Slip Op., p. 23, n. 10.

Footnote 10's comments, attached to a pronouncement that "mere silence" cannot constitute consent to a class proceeding, surely signals that if something else exists, the parties' intent to pursue class-action arbitration can be found. Harkening back to the Court's own words at Slip Op. p. 20, class arbitration may be ordered "if there is a contractual basis for concluding that the part[ies] *agreed*" "to submit to class-arbitration."

It is with the foregoing background and analysis, and through the lens of the *Stolt-Nielsen*

8

decision, that the Arbitrator here has reexamined the Clause Construction Award.

There was silence in the DRA on the question of class-action arbitration. Consequently, there must be more in the agreement and the underlying law – here, the Federal Fair Labor Standards Act ("FLSA") and the Massachusetts wage and hour laws – each of which provides the foundation for the Claimants' assertions that S&W has improperly taken tip credits against the minimum wage for its waitstaff employees and has thereby paid these employees less than the permissible standard minimum wage.

Looking first at the arbitration clause in the DRA, it cannot be seen as other than very broad in its reach. It includes "any claim that, in the absence of this Agreement, would be resolved in a court of law under applicable state or federal law"; and "any claim" is defined to include "any claims for wages, compensation or benefits."

Both the FLSA and the Massachusetts wage and hour laws create causes of action which can be resolved in a court of law. The FLSA authorizes an individual employee to bring a claim "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. §216(b). The Massachusetts wage and hour laws statutorily provide that an aggrieved employee may "institute and prosecute in his own name and on his own behalf, or for himself and others similarly situated, a civil action" to enforce the laws. G.L. c. 149, §150.

The DRA also expressly provides that the "Arbitrator may award any remedy and relief as a court could award on the same claim." Under both of the applicable statutes a court could award class relief.

Since these two statutes were in existence when the DRA was executed, and they form the basis for the Claimants' wage and compensation claims, they must be considered as part of the

DRA even if not specifically quoted therein. "As a general rule, the law in existence at the time an agreement is executed necessarily becomes a part of the agreement." *Mayor of Salem v. Warner Amex Cable Communications, Inc.*, 392 Mass. 663, 666 (1984). See *Feakes v. Bozyczko*, 373 Mass. 633, 636 (1977). See also 4 S. Williston, Contracts §615 (3d ed. 1961). Consequently, the opportunity for a Claimant to proceed with wage claims "for and in behalf of himself . . . and other employees similarly situated" under 29 U.S.C. §216(b) or "for himself and others similarly situated, a civil action" to enforce the law under G.L. c. 149, §150 necessarily became parts of the DRA.

Unlike the admiralty-type proceedings under consideration in *Stolt-Nielsen*, wage and hour claims like those in play here are frequently pursued as class or collective actions, and both the Claimants and S&W must be deemed to understand that.

Also, both the Claimants and S&W, the latter of which drafted and insisted upon the DRA, are presumed by Massachusetts contract law to understand the plain meaning of the words chosen. See, e.g., *Cabot Corporation v. AVX Corporation*, 448 Mass. 629, 638 (2007).

Consequently, all parties must be deemed to have intended that class-action claims and class-action relief are contemplated and permitted by the DRA.

## Conclusion

For all of the various reasons stated above, and included in the July 2, 2008, Partial Final Award on Arbitration Clause Construction, after full consideration of the thrust of the *Stolt-Nielsen* decision, the request by S&W to reverse that Partial Final Award is <u>DENIED</u>.

Further, this Arbitrator, given that he has not altered in any respect the Partial Final Award entered over two years ago, declines to further stay the proceedings in this matter for any court

review of this decision. The parties are thus directed to proceed with the completion of their briefing and argument, if requested, on the Claimants' motion for class certification.

DATED: July 28, 2010

Hon. Allan van Gestel (Ret.)
Arbitrator